

U.S. Department of Justice

United States Attorney
Eastern District of New York

SK:ALK
F. #2020V00716

271 Cadman Plaza East
Brooklyn, New York 11201

May 5, 2020

By ECF and Email

The Honorable Sterling Johnson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. George Viruet
                 Criminal Docket No. 99-1104 (SJ)

Dear Judge Johnson:

      The government respectfully submits this letter-brief in response to the defendant George Viruet's pro se successive petition under 28 U.S.C. § 2255 for a writ of habeas corpus. See ECF No. 186.

      Viruet challenges his convictions, after a jury trial, on Counts Three and Four of the Second Superseding Indictment (attached hereto as Exhibit A), which charged him with using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), and using a firearm in connection with a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j). As explained below, the government agrees that Viruet's convictions on Counts Three and Four should be vacated because those counts were predicated on a crime of violence that satisfies only Section 924(c)(3)(B), which was invalidated by United States v. Davis, 139 S. Ct. 2319 (2019).

      Second, Viruet claims that a 2001 newspaper article constitutes "newly discovered evidence" of a proposed plea agreement that was purportedly uncommunicated to him by his trial counsel. Because Viruet fails to show that the factual predicate for this claim could not have been discovered previously or that the facts underlying this claim would be sufficient to establish that no reasonable factfinder would have found him guilty, the Court should reject this claim.

I.   Background

The charges against Viruet arose from his membership in the Netas gang.  In connection with that membership, Viruet and others conspired to and did kill fellow Netas member, Galiat Santiago.

   A.   Second Superseding Indictment

Viruet was charged in a four-count Second Superseding Indictment with: (1) conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (2) murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); (3) use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c); and (4) use of a firearm in connection with a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1).

   B.   Evidence Presented at Trial

On January 9, 1995, Galiat Santiago, a member of the Netas gang, was shot and killed by fellow Netas member Manuel Garcia in the doorway of his apartment in Queens, New York.  Other Netas members, including Viruet and his co-defendant, Joanna Pimentel, planned and assisted in carrying out the murder.  Viruet drove Garcia and another Netas member, Manuel Aponte, to Santiago's house.  Aponte yelled at Santiago to come to his front door.  When Santiago did so, Garcia shot and killed him.

In late January 2001, Viruet and Pimentel were tried for the Santiago murder.  The evidence introduced at trial established, inter alia, that Viruet and Pimentel, as officers within the gang, presided over the trials of Neta members for violations of the organization's rules, and issued and carried out the punishment of those members who were found guilty.  Santiago was found guilty by the Netas of molesting young girls. The Neta leadership, including Viruet, eventually decided that the punishment for Santiago's violation would be death.  That punishment was carried out by Garcia, Aponte and Viruet on January 9, 1995.

   C.   Conviction and Sentencing

Following a three-week trial, a jury convicted Viruet of (1) conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5); (2) murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); (3) use of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c); and (4) use of a firearm in connection with a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1).  Your Honor sentenced Viruet to life imprisonment on Counts Two and Four, and to 120 months of imprisonment on Counts One and Three, with the sentence for Count One to run concurrently and the sentence for Count Three to run consecutively.

D.      Appeal and Prior Post-Conviction Proceedings

Viruet timely appealed, arguing that the evidence presented at trial was insufficient to support the guilty verdicts and that the jury instructions were deficient. See United States v. Pimentel, No. 01-1333 (2d Cir. June 21, 2001). On October 8, 2003, the Second Circuit rejected these challenges and affirmed Viruet's conviction. See United States v. Pimentel, 346 F.3d 285, 304 (2d Cir. 2003).

On November 22, 2004, Viruet moved to vacate his sentence under 18 U.S.C. § 2255, claiming that the Court improperly sentenced him based on information set forth in the Presentence Report and that he was denied effective assistance of counsel. See Viruet v. United States, No. 4-CV-5141 (SJ) (E.D.N.Y. Nov. 22, 2004), ECF No. 1. On March 21, 2005, the Court denied Viruet's habeas petition in its entirety. In deciding the sentencing issue, the Court concluded that any objection to the PSR was moot in light of the fact that Viruet "was convicted by a jury of murder in aid of racketeering, which subjected him to a mandatory life sentence." See Viruet v. United States, No. 04 CV 5141 (SJ), 2005 WL 820513, at *2 (E.D.N.Y. Mar. 21, 2005) (emphasis in original). The Second Circuit denied a certificate of appealability and dismissed the appeal by Mandate issued March 27, 2008.

E.      The Instant Petition

On July 19, 2013, Viruet filed a successive petition in this Court, claiming that his convictions under Sections 924(c) and 924(j) should be vacated and asserting "newly discovered evidence" in the form of a 2001 news article that stated he rejected a plea offer from the government. The Court transferred the petition to the Second Circuit. See Viruet v. United States, No. 4-CV-5141 (SJ) (E.D.N.Y. Nov. 22, 2004), ECF Nos. 13, 15.

On April 14, 2020, the Second Circuit granted leave to file a successive petition, finding that Viruet's challenge to the 924(c) conviction based on conspiracy to commit murder satisfied the requirements of 28 U.S.C. § 2255(h). The Second Circuit stated that it had not examined Viruet's challenge to his conviction under § 924(j) or his "newly discovered evidence" claim. See ECF No. 185.

II.     The Court Should Vacate Viruet's Convictions Under Sections 924(c) and 924(j)

A.      Relevant Law

In Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"), the Supreme Court ruled that the portion of the Armed Career Criminal Act defining the term "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. 135 S. Ct. 2557-60. Thereafter, defendants like Viruet sought to apply its reasoning to, among other criminal statutes, 18 U.S.C. § 924(c). Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during, or

possesses a firearm in furtherance of, a crime of violence or drug trafficking crime.  A "crime of violence" is a federal felony that:

> (A)	has as an element the use, attempted use, or threatened use of physical force against the person or property of another (the "Elements Clause" or "Force Clause"), or
>
> (B)	that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense (the "Residual Clause").

18 U.S.C. § 924(c)(3).

In Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Supreme Court ruled that the definition of "crime of violence" found in 18 U.S.C. § 16(b) suffered from the same vagueness problems that Johnson II had found to be fatal to § 924(e)(2)(B)(ii), rendering § 16(b) unconstitutional as well.  The Court explained that § 16(b) both "calls for a court to identify a crime's 'ordinary case' in order to measure the crime's risk" and also creates "uncertainty about the level of risk that makes a crime 'violent.'"  138 S. Ct. at 1215.  In the course of its ruling, the Court rejected the government's arguments attempting to distinguish § 16(b) from § 924(e)(2)(B)(ii).  Id. at 1218-23.

On June 24, 2019, the Supreme Court decided United States v. Davis and held that Section 924(c)'s Residual Clause was unconstitutionally vague in light of Dimaya and Johnson II.  139 S. Ct. 2319, 2326-27 (2019).  Accordingly, a predicate crime is a "crime of violence" under Section 924(c) only if it qualifies under the Elements Clause.

As noted, a predicate crime is a crime of violence under the Elements Clause if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  To make this determination, courts apply the "categorical approach."  Mathis v. United States, 136 S. Ct. 2243, 2248-49 (2016).  "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute," examining only the statutory definitions of the offense, not the defendant's conduct in committing it.  Hill, 890 F.3d at 55 (citation omitted).  In applying the categorical approach, courts should not be guided by hypothetical arguments that a statute may be construed in a way devoid from real-world application; rather "there must be 'a realistic probability, not a theoretical possibility,' that the statute at issue could be applied to conduct that does not constitute a crime of violence."  Hill, 890 F.3d at 56 (quoting Gonzalez v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)); accord Moncrieffe v. Holder, 569 U.S. 184, 191 (2013) (explaining that the "focus on the minimum conduct criminalized by the . . . statute is not an invitation to apply 'legal imagination' to the . . . offense") (quoting Duenas-Alvarez, 549 U.S. at 193)).

4

B. Discussion

As noted earlier, Viruet was found guilty of using a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Three) and using a firearm in connection with a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j)(1) (Count Four). These counts were predicated on the conspiracy to murder alleged in Count One. See Ex. A ¶¶ 7, 10-11. That conspiracy does not categorically qualify as a crime of violence under the Elements Clause. This is because "conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." Iannelli v. United States, 420 U.S. 770, 777 (1975). That agreement need not ripen into a substantive offense. Id. at 777-778; see Callanan v. United States, 364 U.S. 587, 593-594 (1961). And even where a conspiracy offense requires proof of an overt act, that act need not be violent or even "be itself a crime." Braverman v. United States, 317 U.S. 49, 53 (1942). Accordingly, conspiracy offenses do not necessarily require the use, attempted use, or threatened use of force, and thus they do not qualify as crimes of violence under the Elements Clause. See, e.g., United States v. Tucker, No. 18-CR-0119 (SJ), 2020 WL 93951, at *5 (E.D.N.Y. Jan. 8, 2020) ("Following Davis, it is clear that Hobbs Act conspiracy is not categorically a crime of violence."). Because Counts Three and Four were predicated on conspiracy to murder, and conspiracy offenses no longer qualify as crimes of violence after Davis, Viruet's convictions on Counts Three and Four must be vacated.

III. The Court Should Deny Viruet's Claim Relating to "Newly Discovered Evidence"

As noted earlier, Viruet also asserts that a 2001 newspaper article constitutes "newly discovered evidence" of a proposed plea agreement that was purportedly uncommunicated to him by his trial counsel. A claim of newly discovered evidence presented in a second or successive habeas petition shall be dismissed unless: (1) "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence"; and (2) "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." See 28 U.S.C. § 2244(b)(2)(B); 28 U.S.C. § 2255(h). Viruet's claim does not meet either requirement.

First, Viruet has not alleged, nor could he, that he could not have discovered this information through the exercise of due diligence prior to the filing of his first Section 2255 petition. The newspaper article that Viruet relies on was published in 2001 and he filed his first Section 2255 petition in 2004. The Court should deny the petition on that ground alone.

Second, the purportedly newly discovered evidence is not "sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [Viruet] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). To the contrary, "a supposed plea offer would simply have no bearing on the deliberations of a 'reasonable factfinder' regarding [Viruet's] innocence or guilt." In

5

re McFadden, 826 F.3d 706, 708 (4th Cir. 2016); see also, e.g., Bucci v. United States, 809 F.3d 23, 26 (1st Cir. 2015) (denying leave to file successive petition based on newly discovered evidence that trial counsel never engaged in plea discussions despite telling the defendant that he had because that new evidence did not establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense); Miranda v. United States, No. 98 CV 1490 (ILG), 2013 WL 55689, at *3 (E.D.N.Y. Jan. 3, 2013) ("The allegedly 'newly discovered evidence' of the specific terms of the plea agreement in no way 'establish[es] . . . that no reasonable factfinder would have found the movant guilty of the offense.' Mr. Miranda's argument is that he would have pled guilty, not that such 'newly discovered evidence' would have exculpated him.").

Finally, in his petition, Viruet also cites Supreme Court decisions relating to ineffective assistance of counsel. See ECF No. 186 at 9 (citing Martinez v. Ryan, 132 S. Ct. 1309 (2012); Missouri v. Frye, 132 S. Ct. 1399 (2012)). To the extent that Viruet asserts a new ineffective assistance of counsel claim based on his trial counsel's alleged failure to advise him of a plea offer, that claim would also fail. First, as explained above, the evidence cited by Viruet in support of the claim was available at the time of his first petition. See, e.g., Corrao v. United States, 152 F.3d 188, 192 (2d Cir. 1998) ("The evidence for the ineffective assistance claim Corrao now asserts in his 1997 petition . . . was certainly available at the time of his 1995 petition. Accordingly, we deny the motion for leave to file a successive petition."). Second, the claim is not based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). As federal courts have routinely held, neither Martinez nor Frye announced a new rule of constitutional law. See, e.g., Gallagher v. United States, 711 F.3d 315, 315-16 (2d Cir. 2013) (per curiam) ("Neither Lafler nor Frye announced a 'new rule of constitutional law.'"); Moreland v. Robinson, 813 F.3d 315, 326 (6th Cir. 2016) ("Moreland's new claims do not rely on a new rule of constitutional law made retroactive by the Supreme Court. . . . the Martinez rule was equitable, not constitutional."); Bucci, 809 F.3d at 26 (stating "the notion that plea bargaining falls within the scope of the Sixth Amendment right to counsel was not a new rule" announced in Frye).

In any event, the record currently before the Court makes clear that this new ineffective assistance of counsel claim would fail on its merits.[1] In particular, a June 14, 2013 letter from the defendant's trial counsel to the defendant, attached to the defendant's 2013 motion to vacate, undermines his claim. See Viruet v. United States, No. 04-CV-5141 (E.D.N.Y. July 19, 2013), ECF No. 13 at 15 (attached hereto as Exhibit B). That letter states unequivocally that trial counsel "specifically recall[ed] that [the defendant] turned down the offer on the ground that [he was] innocent." Id. The letter continues that trial counsel "ha[d] never failed to convey a plea offer to a client, and certainly did not do so in [the defendant's] case." Id. To the contrary, trial counsel conveyed "extremely strong suggestions . . .that [the

---

[1] Due to the current COVID-19 pandemic, the government has not yet been able to obtain the closed files relating to this case. Should the government have any updates after obtaining the closed file, the government will seek leave to file a supplemental submission.

6

defendant] take any (bottom-line) deal offered," and discussed with the defendant "the poor odds of winning a federal trial, the nature of the evidence, and how it is almost always stronger when actually presented than when anticipated before trial." Id.  Accordingly, this new ineffective assistance of counsel claim would be meritless.

IV.     Conclusion

For the reasons set forth above, the Court should vacate the defendant's convictions on Counts Three and Four of the Second Superseding Indictment and otherwise deny the defendant's petition.

Respectfully submitted,

RICHARD P. DONOGHUE<br>
United States Attorney

By:     /s/ Anna Karamigios
        Anna L. Karamigios
        Assistant U.S. Attorney
        (718) 254-6225


cc:     George Viruet, pro se (via certified mail)
        Clerk of Court (via ECF)

# EXHIBIT A

BJC:CF:cf
F.# 1999R01630

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JOANNA PIMENTEL, also known as
    "La Madrina,"
GEORGE VIRUET, and
JORGE APONTE, also known as
    "Cano,"

             Defendants.

- - - - - - - - - - - - - - - - -X

AUG 25 2000

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 99-1104(S-2)(SJ)
(T. 18, U.S.C., §§
1959(a)(1), 1959(a)(5),
924(c)(1), 924(j)
2 and 3551 et seq.)

THE GRAND JURY CHARGES:

                INTRODUCTION TO COUNTS ONE AND TWO

     At all times relevant to this Indictment:

     1.   In or about and between September 1994 and January 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOANNA PIMENTEL, also known as "la Madrina," GEORGE VIRUET, and JORGE APONTE, also known as "Cano," together with others, were members and associates of the Netas, a criminal organization whose members and associates engaged in various forms of criminal activity including murder, drug trafficking, unlawful dealing in firearms and assault.

     2.   The Netas, including its members and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals

2

associated in fact, that was engaged in, and the activities of which affected, interstate and foreign commerce.

       3.    The Netas, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, murder and attempted murder, in violation of the laws of New York and Pennsylvania, and drug trafficking, in violation of Title 21, United States Code, Section 846.

       4.    The members and associates of the Netas sought, among other things, to:

       a.    Preserve and protect the power, territory and profits of the Netas through the use of intimidation, violence and threats of violence;

       b.    Promote and enhance the criminal activities of the Netas and its members and associates; and

       c.    Keep victims in fear of the Netas and its members and associates through violence, intimidation, and threats of violence.

       5.    The defendants and other members and associates of the Netas participated in the conduct of the affairs of the

3

enterprise by the following means and methods:

      a.   Committing, attempting to commit and threatening to commit acts of violence, including murder, attempted murder, and assault to protect and expand the Netas' criminal operations;

      b.   Using and threatening to use physical violence against various individuals, including members of rival criminal organizations; and

      c.   Using and threatening to use physical violence against members of the Netas who violated the internal rules of the enterprise.

<u>COUNT ONE</u>

6.   The allegations contained in paragraphs one through five are hereby realleged and incorporated as if set forth herein.

7.   In or about and between September 1994 and January 9, 1995, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the Netas, an enterprise which was engaged in racketeering activity, the defendants JOANNA PIMENTEL, also known as "la Madrina," GEORGE VIRUET and JORGE APONTE, also known as "Cano," together with others, did knowingly and intentionally

conspire to murder Galiat Santiago, in violation of Sections 125.25 and 105.15 of the New York Penal Law.

(Title 18, United States Code, Sections 1959(a)(5) and 3551 et seq.)

COUNT TWO

8. The allegations contained in paragraphs one through five are hereby realleged and incorporated as if set forth herein.

9. On or about January 9, 1995, within the Eastern District of New York, for the purpose of gaining entrance to and maintaining and increasing position in the Netas, an enterprise which was engaged in racketeering activity, the defendants JOANNA PIMENTEL, also known as "la Madrina," GEORGE VIRUET and JORGE APONTE, also known as "Cano," together with others, did knowingly and intentionally murder Galiat Santiago, in violation of Sections 125.25 and 115.05 of the New York Penal Law.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

COUNT THREE

10. On or about January 9, 1995, within the Eastern District of New York, the defendants JOANNA PIMENTEL, also known as "La Madrina," GEORGE VIRUET and JORGE APONTE, also known as "Cano," together with others, did knowingly and intentionally use and carry a firearm during and in relation to a crime of

violence, to wit, the crime charged in Count One.

(Title 18, United States Code, Sections 924(c)(1), 2 and 3551 et seq.)

### COUNT FOUR

11. On or about January 9, 1995, within the Eastern District of New York, the defendants JOANNA PIMENTEL, also known as "La Madrina," GEORGE VIRUET and JORGE APONTE, also known as "Cano," together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit, the crime charged in Count Three, knowingly and intentionally caused the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that the defendants, with malice aforethought, did unlawfully kill Galiat Santiago willfully, deliberately, maliciously, and with premeditation.

(Title 18, United States Code, Sections 924(j)(1), 2 and 3551 et seq.)

A TRUE BILL

_Sandra Fonseca_
FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK
BY: _[signature]_
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.131

# EXHIBIT B

**BARRY GENE RHODES**
*Attorney at Law*

EXHIBIT D

112 WEST 34 STREET, 18TH FLOOR
NEW YORK, NY 10120
TELEPHONE: 212-946-2816
FACSIMILE:  212-946-2808

June 14, 2013

Mr. George Viruet
01193-748
FCI Berlin
P.O. Box 9000
Berlin, NH 03570

Dear Mr. Viruet:

    We spoke on the telephone about two weeks ago and you alleged that a fellow inmate showed you an old newspaper clipping which reflected that you turned down a plea offer of fifteen years before trial. You then told me that you had no memory of the offer and that you would have accepted it if it had been actually offered.
    I specifically recall that you turned down the offer on the ground that you were innocent.
    I also remember that you testified at trial and that you did not testify that you had knowingly participated in a murder. Protestations of innocence certainly explain why a plea was not taken, since a guilty plea requires an admission of guilt. I remember you being cross-examined by Pamela Chen, the more experienced of the two prosecutors, and that your version of the events held up better than we expected
    For whatever it is worth to you as you search your own memory, I have never failed to convey a plea offer to a client, and certainly did not do so in your case. If you think back, you should recall extremely strong suggestions by me that you take any (bottom-line) deal offered as that is my consistent advice in federal cases. We discussed the poor odds of winning a federal trial, the nature of the evidence, and how it is almost always stronger when actually presented than when anticipated before trial.
    Your accusation, that I failed to convey a plea offer, puts us in an adversarial position and makes it ethically inappropriate for me to advise you how to proceed. As I told you on the telephone, however, I wish you the best of luck.

Very truly yours,

*[signature]*

BARRY GENE RHODES

BGR:ck